**Vincent RINANDO, Appellant,**

v.

**Juan R. STERN, M.D., Appellee.**

**No. A14–91–01102–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 14, 1992.

Joe S. Maida, Houston, for appellant.

Mary Hunnell Smith, Houston, for appellee.

Before PAUL PRESSLER, SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

Vincent Rinando brings this appeal from a summary judgment granted in favor of Dr. Juan Stern. Appellant brought a suit for medical malpractice against Dr. Stern, a urologist. Appellant complained that appellee breached the duty of care owed to appellant by: (1) failing to recognize that his kidney stone had not been crushed, (2) failing to inform him of this fact; and, (3) failing to provide follow-up treatment. Appellant claimed that the breach resulted in pain, frustration, and anxiety for which he sought $212,000.00 in damages. Appellee filed a motion for summary judgment supported by the affidavit of a medical expert, and the court granted the motion on July 18, 1991. We affirm.

In two points of error, appellant contends that the trial court erred in granting a summary judgment on the basis that there was no evidence of negligence in appellee's failure to inform appellant that the kidney stone was not destroyed, or in appellee's failure to administer follow-up treatment.

The record reflects that appellant entered Park Plaza Hospital on May 15, 1988, with acute pain, nausea, and vomiting. After performing blood tests and x-rays, appellant was diagnosed with having a stone in the left kidney. Because the stone was one half inch in size and could not be passed naturally, Dr. Stern determined that further treatment was required, and recommended a procedure known as Extracorporeal Shock Wave Lithotripsy (ESWL), in which shock waves are used to disintegrate kidney stones which can then be expelled from the body.

On the evening of May 19, 1988, appellant entered St. Joseph Hospital for the ESWL procedure. Dr. Stern advised appel-

lant of possible complications and of the probability of success. Appellant was positioned properly, given the maximum allowable dose (2,000 shocks), and was released the following day.

On May 21, 1988, appellant was readmitted to Park Plaza Hospital complaining of abdominal pain. At that time, Dr. Stern suspected that a stent which had been placed in his kidney was causing discomfort, or that a blood clot might be blocking the bladder. X-rays revealed that the calcification was still present in the left kidney. However, due to the blood clots in appellant's kidney, it was not possible to determine if the stone was actually fragmented. Dr. Stern stated he cannot determine the status of a stone until seven to ten days after the ESWL.

Appellant was released on May 25, 1988, and on the following morning, Dr. Stern spoke with Mrs. Rinando about appellant's continuing discomfort. After that, Mr. Rinando withdrew from Dr. Stern's care, and on May 27, 1988, sought medical treatment elsewhere. Two subsequent ESWL procedures finally destroyed appellant's kidney stone. Appellant then brought suit against Dr. Stern for misrepresentation, and for the lack of follow up treatment which resulted in pain and mental anguish.

In his motion for summary judgment, appellee argued that appellant had not proved a breach of medically accepted standard of care, nor a causal connection between the care provided and the alleged injury. Attached to his motion was the affidavit of Dr. Robert Kaminsky, a board certified urologist. Dr. Kaminsky's affidavit listed his qualifications, the standard procedure for removing kidney stones by ESWL, and a summary of the treatment used on Mr. Rinando. The affidavit also set forth the standard of care for urologists using the ESWL procedure. Dr. Kaminsky's opinion was that Dr. Stern did nothing which deviated from the standard practice.

Dr. Kaminsky also stated that it was not unusual for a patient to have to undergo more than one procedure to fragment a kidney stone. Additionally, he said the effectiveness of the procedure is often not known for weeks. Dr. Stern never saw appellant again after his release on the 25th of May, which was six days after the ESWL procedure was administered. According to Dr. Kaminsky's expert opinion, an assessment of the stone was not possible in this short period of time. Furthermore, even if Dr. Stern mistakenly informed appellant that the stone had been crushed, Dr. Kaminsky noted that this would not be a violation of the standard of care.

As to the allegation of Dr. Stern's failure to provide follow-up treatment, a review of the medical records and the depositions shows that appellant never returned for follow-up treatment.

Appellee's affidavit in support of the motion for summary judgment was not controverted by any expert medical testimony. Appellant's response consisted only of his own affidavit stating that Dr. Stern had told him the stone had been crushed. His only other summary judgment proof consisted of Dr. Stern's deposition. Appellant specifically points to the following exchange and asserts that Dr. Stern's own testimony establishes that he did not meet the medical standard of care in Harris County:

Q. And if you *knew* that the stone had not been crushed, and did not tell your patient *as soon as you were certain*, that would not meet the normal medical standard of Harris County, would it?

A. If we are talking about Mr. Rinando's case, he was informed that the calcification was still there, it was in the same position, it probably will require further treatment, but that that was a decision we can make once all the acute process changed and his condition from the postoperative trauma improved.

\* \* \* \* \* \*

Q. .... Okay. Let's assume for the purpose of my question that you know a patient has a stone that the ESWL has been attempted on, and that that stone was not crushed?

A. We didn't know that at the time.

Q. I'm just asking you to assume this with me. *If you know that the stone is not crushed, and you're certain that it's not crushed, and you have evidence to that effect,* would you agree with me that it is not good medical practice if you do not inform the patient as soon as possible?

MS. SMITH: I'm going to have to object to the "as soon as possible", with the criteria that he tried to explain that and put some form of time constraint on it, because of what the facts may be as to each patient.

Q. (By Mr. Maida) All right, sir. *As soon as you are convinced in your own mind* that the stone has not been crushed after an ESWL procedure—

A. Yes, sir.

Q. —would you agree with me that you should tell your patient that?

A. Yes, sir.

Q. And to not do so would not conform with good medical practice, would it?

A. At least not with my standard.

(emphasis added).

■ A motion for summary judgment should be granted if the movant establishes, as a matter of law, that there is no genuine issue of material fact. TEX. R.CIV.P. 166a. The reviewing court must indulge all inferences and resolve all doubts in the non-movant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–9 (Tex.1985). Further, in medical malpractice suits, negligence and proximate cause must be proven by expert testimony. *Tilotta v. Goodall,* 752 S.W.2d 160, 163 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (citing *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965)). Lay witness testimony is insufficient to prove negligence and proximate cause on the part of Dr. Stern.

Appellant relies on a case in which the Texas Supreme Court held that a doctor-defendant established the requisite breach of standard of care by his own testimony. *Williams v. Bennett,* 610 S.W.2d 144 (Tex. 1980). In that case, the doctor had testified "that it would be bad medical practice to dismiss a patient during the course of a

virulent infectious process." *Id.* at 146. There was direct evidence that the doctor released his patient during an infectious stage. Therefore, by his own testimony the jury could have found negligence. Appellant contends the doctor's testimony and certain x-rays raised a fact issue as to whether Dr. Stern knew that the stone was not crushed and failed to tell appellant.

From a review of the record, we cannot find any testimony by Dr. Stern that he *"knew or was certain in his own mind"* as to the status of the kidney stone. Rather, the deposition shows Dr. Stern could not be certain. One such example is reflected by the following exchange:

Q. After the X-ray of 5–21 was done and you saw that the stone was still present, did you tell Mr. Rinando, or do your notes, or any hospital notes indicate that you told Mr. Rinando an additional procedure would have to be performed?

A. I told Mr. Rinando that there was a possibility that I still was a little leery about making a decision whether the stone was crushed or not, that I still couldn't tell; that I would wait until I see him as an outpatient, repeat the X-rays, once this acute inflammatory process is cleared up and we could do a better evaluation of it.

Q. Doctor, didn't you already have two X-rays that showed the stone was still present and had not been crushed?

A. Yes, sir, but we did not know whether the stone had been crushed or not. We know that the stone was in place. It's reported as a calcification. Whether the stone or not moves [sic], or it's crushed, it's sometimes very difficult to tell. At that particular time, I was more interested at that particular time to take care of his immediate pain and discomfort. The reports from—different reports on the X-rays vary a little bit on the sizes of the stone, which is very hard sometimes to tell whether it's due to the fact that the stone has been minimally, or somewhat damaged or broken. Also the fact that his kidney was, at that particular time, full of blood clots. That in itself may keep a stone compressed in

the lower calix in the situation that it may look like it's complete and full, and it may be—it may be in pieces.

This court has held that valid hypothetical questions must be based upon direct evidence. *Dudley v. Humana Hospital Corp.*, 817 S.W.2d 124, 127 (Tex. App.—Houston [14th Dist.] 1991, no writ). A presumption of a fact cannot rest upon an answer to a hypothetical question. *See Polasek v. Quinius*, 438 S.W.2d 828, 836 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.). Therefore, Dr. Stern's answer to a hypothetical question, which was not based on any proven fact, will not support the presumption that Dr. Stern was certain that the stone had not been crushed.

We find the evidence by appellee sufficient to support a summary judgment, and further find that appellant did not offer evidence to controvert or present any genuine issue of material fact. Both points of error are overruled.

Accordingly, the judgment of the trial court is affirmed.