The STATE of Texas; the County of Bexar, the City of San Antonio; and David J. Garcia, Appellants,

v.

CASTLE HILLS FOREST, INC., et al., Appellees.

No. 04–92–00096–CV.

Court of Appeals of Texas, San Antonio.

Nov. 18, 1992.

Rehearing Denied Dec. 24, 1992.

Steven C. Hilbig, Crim. Dist. Atty., Victoria Guerra, Asst. Crim. Dist. Atty., Civ. Section, Oliver S. Heard, Jr., Karl E. Hays, Heard, Goggan, Blair & Williams, San Antonio, for appellants.

David B. West, Cox & Smith, Inc., Stephen Lang, Lang, Ladon, Green, Coghlan & Fisher, P.C., San Antonio, for appellees.

Before BUTTS, PEEPLES and CARR, JJ.

## OPINION

PEEPLES, Justice.

The issue in this property tax collection case is whether a district court may reduce the court costs owed by the taxpayer when the taxing entity filed separate suits instead of one suit involving several parcels of land. We hold that a court has the discretion to reduce the amount of costs taxed against the taxpayer.

The State of Texas, Bexar County, and a school district filed 123 separate tax collection lawsuits involving 123 subdivision lots that had the same owner (Castle Hills Forest, Inc.), the same lender and first lienholder (First City Bank), and the same deed and deed of trust. The taxing entities sought foreclosure to collect the taxes owed. Ultimately First City protected its $1,450,000 lien by paying the owner's $34,000 tax bill for 1989, and the parties agreed to consolidate the cases for a ruling about who would pay court costs. After a hearing concerning apportionment of costs, the court found that the tax authorities were fully aware that all 123 parcels had common ownership, and the authorities could have filed a single lawsuit to collect the taxes without great difficulty or inconvenience. The court also found that separate suits and service of process were not necessary. The court assessed $9000 in abstractors' fees for all 123 parcels against the taxpayer, but ordered the statutory filing fees (including fees for filing, service of

process, and a judiciary fee)[1] assessed on the basis of a single lawsuit, the consolidated action. Filing (and other) fees for all 123 separate suits ($37,800) would have exceeded the amount of taxes at issue for 1989 ($34,000).

At the outset the taxing entities challenge First City's standing to seek reduction of costs in the trial court. Although we think trial courts are empowered to adjudge costs under TEX.R.CIV.P. 141 with or without a motion, we also conclude that First City had standing to ask for reduction of costs. First City did not bring this lawsuit; it was sued as a defendant and given notice because the tax lien threatened to wipe out its deed-of-trust lien. Because the tax code empowered the taxing entities to sell the property to collect costs, *see* TEX.TAX CODE ANN. § 33.48(b) (Vernon 1992), First City had little choice but to pay the costs and protect its interest. Certainly First City was affected by the costs individually and not simply as a member of the public. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). We hold that the court had power to tax costs without request from a party, and that First City had standing to seek a reduction of court costs.

Several rules and statutes bear upon the central issue before us—whether the court erred in reducing the court costs owed by First City. Section 33.48 of the tax code gives the taxing unit the right to recover certain costs and other expenses:

### § 33.48. Recovery of Costs and Expenses

(a) In addition to other costs authorized by law, *a taxing unit is entitled to recover the following costs* and expenses in a suit to collect a delinquent tax:

(1) *all usual court costs, including the cost of serving process;*

(2) expenses of foreclosure sale;

(3) reasonable expenses, subject to approval by the court, that are incurred by the taxing unit in determining the name, identity, and location of necessary parties and in procuring necessary legal de-

scriptions of the property on which a delinquent tax is due; and

(4) reasonable attorney's fees approved by the court and not exceeding 15 percent of the total amount of taxes, penalties, and interest adjudged due the unit.

TEX.TAX CODE § 33.48 (Vernon 1992) (emphasis added). Section 33.49 exempts the taxing unit from court costs:

Except as provided by Subsection (b) of this section [pertaining to the costs of publishing citations and notices], a taxing unit is not liable in a suit to collect taxes for court costs, including any fees for service of process, and may not be required to post security for the costs.

*Id.* § 33.49(a). But rule 141 gives courts discretion in assessing costs: "The court may, for good cause, to be stated on the record, adjudge the costs *otherwise than as provided by law* or these rules." TEX. R.CIV.P. 141 (emphasis added); *see Rogers v. Walmart Stores, Inc.,* 686 S.W.2d 599, 601 (Tex.1985).

The taxing entities argue that § 33.48 gives them an absolute right to recover their costs, which overrides the trial court's power to apportion costs under rule 141. They point out that the rules of civil procedure must yield when they conflict with statutes. *See* TEX. CONST. art. V, § 25; TEX.GOV'T.CODE ANN. § 22.004 (Vernon 1988) (rules of civil procedure may not "abridge, enlarge, or modify the substantive rights of a litigant"); *Few v. Charter Oak Fire Ins. Co.,* 463 S.W.2d 424, 425 (Tex.1971).

We conclude that the rule and the statute do not conflict because § 33.48 does not give the taxing entity an absolute right to all its costs without court review. The legislature enacted the statute with full knowledge that trial courts had power under rule 141 to assess costs "otherwise than as provided by law." If the legislature had meant to curtail court apportionment of costs, it could easily have said so. Instead it said merely that the taxing entity "is entitled to recover ... all usual court

---

**1.** The judiciary fee is mandated by TEX. GOV'T.CODE ANN. § 51.701 (Vernon 1988).

costs," which is similar to rule 131's provision that the successful party "shall recover of his adversary all costs." TEX.R.CIV.P. 131. Section 33.48's language shows no intention to override the trial court's power under rule 141 to adjudge costs contrary to the usual rules.

The taxing units also argue that rule 141 empowers the court only to *adjudge* costs otherwise than the law provides, but not to *reduce* them. It is true that in the ordinary case a court will apportion or shift the responsibility for paying costs, not reduce the total amount. But the power to "adjudge," or to award judicially, includes the power to set the amount. Certainly nothing in the rule's wording prevents a trial court from reducing the amount of costs owed by a defendant when a plaintiff could have filed one all-encompassing lawsuit instead of many small ones.

The Bexar County District Clerk argues that the law requires him to collect filing fees, which courts cannot waive or modify. Section 51.317 of the government code provides:

The district clerk shall collect at the time the suit or action is filed the fees provided by Subsection (b) of this section for services performed by the clerk.

TEX.GOV'T.CODE ANN. § 51.317 (Vernon 1988). But § 51.317 simply requires collection of fees "at the time the suit or action is filed." Nothing in § 51.317 prevents a court from adjusting the amount of costs owed by the taxpayer when one suit would have sufficed but multiple suits were filed. Though the district clerk will be paid less for one lawsuit than for 123, his real quarrel is with § 33.49, which immunizes the taxing entities from liability for court costs and filing fees.

We will not disturb the trial court's finding of good cause for reducing the costs owed by First City. The taxing entities knew when they filed the 123 suits that there was one owner, one first lienholder, and one deed of trust. The court found that one suit concerning all 123 parcels would have been adequate. The district clerk's office spent only a few hours processing the suits, and process servers made only six to eight trips serving the owner and the first and second lienholders. The record supports the court's finding of good cause to tax costs "otherwise than as provided by law" under rule 141.

We are told that if several parcels are consolidated into one suit, an owner could stall the consolidated suit's progress toward trial by conveying one small parcel to a third party. But in suits like this, courts can protect against transfers by defendant owners by ordering a severance or enjoining them from conveying any parcel already subject to suit. The taxing entity can also prevent abuse by filing a lis pendens. *See* TEX.PROP.CODE ANN. §§ 12.007, 13.004 (Vernon 1984); 1 TEX.JUR.3D *Actions* §§ 281–309 (1979). In addition, the tax code authorizes penalties. *See* TEX.TAX CODE ANN. §§ 33.01, 33.07 (Vernon 1992).

Administrative convenience seems to be the overriding reason why the taxing entities prefer to file separate suits for separate tracts of land, no matter how common the ownership and lien structure may be. The data processing operation is easier when they file only one lawsuit per parcel. And other developments can slow down a large lawsuit involving many parcels of land. One parcel may be subject to a remainder interest; another may involve a partnership; there may be more than one lender; an owner of one parcel may go into bankruptcy. None of this is known until after suits are filed.

We are aware of these concerns. We stress that nothing in this opinion forces the taxing entities to file one lawsuit when collecting taxes on adjoining parcels that have common ownership. But here the taxing entities knew from the beginning that they were dealing with one common owner of all 123 tracts, one first lienholder, and one set of second lienholders. We hold simply that trial courts have the discretion under rule 141 to reduce the costs when one suit would have sufficed but multiple suits were filed.

The judgment is affirmed.