Rey HERNANDEZ, Sr., and Lucy Hernandez, Individually, and as Heirs at Law of the Estate of Rey Hernandez, Jr., Deceased, Connie Viscaino, Daniel Viscaino, Elvera Hernandez, and Evelyn Lopez, Appellants,

v.

Dr. James L. LUKEFAHR, Appellee.

No. C14–93–00336–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 5, 1994.

James B. Manley, Houston, for appellants.

John C. Marshall, Deborah L. Novick, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This appeal comes to us from the trial court's granting summary judgment in a suit filed alleging medical malpractice in the death of a two-month old infant. Appellee based his motion for summary judgment on the affirmative defense of the good samaritan statute at section 74.001(b)(3) of the Texas Civil Practice and Remedies Code. Appellants bring three points of error on appeal, two of which assert the existence of a fact question precluding the granting of summary judgment, and a third asserting that appellee offered insufficient summary judgment proof in support of his motion. We affirm the judgment of the trial court.

Appellants brought suit originally against four defendants for the death of two-month old Rey Hernandez, Jr.: Pasadena Bayshore Hospital, Inc., d/b/a Bayshore Medical Center; Dr. James L. Lukefahr; Dr. Dennis L. Barstasis; and Linda Hishke, in her capacity as administrator of the aforenamed Bayshore Medical Center. Appellants settled with one other defendant physician and took a nonsuit with prejudice as to both Pasadena Bayshore Hospital d/b/a Bayshore Medical Center and Linda Hishke.

It is beyond dispute that this case involves tragic facts and circumstances. Two-month old Rey Hernandez, Jr. was brought to the emergency room of Bayshore Medical Hospital by his grandmother because he was having respiratory problems. She herself administered CPR to the infant before taking him to the hospital. Dr. Lukefahr, a pediatrician, was on another floor of the hospital visiting with the family of a patient when a nurse informed him of the hospital's emergency call over the loudspeaker for a pediatrician to go immediately to the emergency room. Dr. Lukefahr responded to the call and, when he arrived at the emergency room, saw the emergency room physician performing CPR on an infant. Dr. Lukefahr joined the rescue efforts. After over one hour of attempting to resuscitate the child, Dr. Lukefahr noted that the infant's pupils were fixed and dilated and that the cardiac monitor showed no activity. Dr. Lukefahr pronounced the infant dead. The family stayed with the infant while awaiting the arrival of the medical examiner, and during this time they noticed some movement by the infant. They informed a nearby nurse of the move-

ment, but the nurse did not make any inquiry, stating that the movement had to have been induced by the medication given in the resuscitation efforts. However, a pulse was found on the infant approximately one and one-half hours later, and the infant was transported to Texas Children's Hospital. A few days later the infant's cardiac and respiratory activity ceased completely.

Because there has been no trial in this matter, the above facts are only a general review of the circumstances resulting in the tragic death of the infant. However, appellee contends that certain facts are not in dispute, and these facts concern the applicability of the good samaritan statute. As of the date of the alleged malpractice the statute read as follows:

(a) A person who in good faith administers emergency care at the scene of an emergency or in a hospital is not liable in civil damages for an act performed during the emergency unless the act is wilfully or wantonly negligent.

(b) This section does not apply to care administered:

(1) for or in expectation of remuneration;

(2) by a person who was at the scene of the emergency because he or a person he represents as an agent was soliciting business or seeking to perform a service for remuneration;

(3) by a person who regularly administers care in a hospital emergency room; or

(4) by an admitting physician or a treating physician associated by the admitting physician of the patient bringing a health-care liability claim.

Act approved June 16, 1977, 65th Leg., R.S., ch. 817, 1977 Tex.Gen.Laws 2039, 2054, *amended by* Act of May 22, 1993, 73rd Leg., R.S., ch. 960, § 1, 1993 Tex.Gen. Laws 4193, 4194 (current version at TEX. CIV.PRAC. & REM.CODE ANN. § 74.001 (Vernon Supp.1994)).

Our research reveals a surprisingly limited amount of case law on the statute. Only three Texas cases even mention the statute. *E.g., Wheeler v. Yettie Kersting Memorial Hospital,* 866 S.W.2d 32, 50 (Tex.App.—Houston [1st Dist.] 1993, n.w.h.); *Eoff v. Hal*

*and Charlie Peterson Found.,* 811 S.W.2d 187, 192 (Tex.App.—San Antonio 1991, no writ); *Howell v. City Towing Assocs., Inc.,* 717 S.W.2d 729, 731–32 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). None of these cases involve applying the statute to a medical doctor, thereby making the instant case one of first impression despite the statute's existence since 1961. *See* Darrell L. Keith, *Medical Expert Testimony in Texas Medical Malpractice Cases,* 43 BAYLOR L.REV. 1, 132 n. 850 (1991) (noting statute's original enactment in 1961 "to encourage reluctant physicians to administer emergency care to victims without delay"). Even throughout the United States, there are but a handful of cases interpreting comparable statutes in each state. *See* Comment, Robert A. Mason, *Good Samaritan Laws—Legal Disarray: An Update,* 38 MERCER L.REV. 1439, 1443 (1987). Thus, it is fortunate that the facts of this case do not demand anything more than an objective analysis of the plain language of the statute.

 Because appellee raised the affirmative defense of the good samaritan statute in his motion for summary judgment, his was the burden to prove all essential elements of the affirmative defense. TEX.R.CIV.P. 166a(c); *Murphy v. McDermott, Inc.,* 807 S.W.2d 606, 612 (Tex.App.—Houston [14th Dist.] 1991, writ denied). The summary judgment proceeding is not designed to deny a party the right to a trial by jury but, rather, to "eliminate patently unmeritorious claims and untenable defenses." *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 n. 5 (1979). Thus, the burden is never shifted to the non-movant until the movant establishes his right to judgment as a matter of law. *Id.* at 678.

 Dr. Lukefahr submitted an affidavit with his motion setting out the extent of his involvement with the infant on the day in question. The statute sets out four exceptions which will preclude application of the affirmative defense. Dr. Lukefahr's summary judgment proof must therefore show that he falls within the statute as a matter of law, that is, that none of the exceptions within the statute remove him from the protection of the statute.

The first exception in the statute applies to a person who administers the care "for or in expectation of remuneration." The uncontroverted testimony of Dr. Lukefahr shows that he did not receive any compensation for his services that day, nor did he render his services in expectation of compensation. The second exception also does not apply because Dr. Lukefahr was likewise not acting as an agent on behalf of any entity seeking or expecting remuneration for the services.

The third exception applies to "a person who regularly administers care in a hospital emergency room." Appellants argue strenuously that Dr. Lukefahr's affirmative defense fails for this reason. However, Dr. Lukefahr's affidavit establishes that he was not baby Rey's doctor, he had never before seen the infant or the infant's mother, and he was not one of the doctors who specializes in and or is routinely assigned to an emergency room, including the emergency room at Bayshore Medical Center. Dr. Lukefahr's affidavit is uncontroverted in this respect. Indeed, the affidavit asserts that there was an emergency room physician present at the time of the incident who had begun resuscitation procedures on the infant and who was doing so when Dr. Lukefahr arrived. Appellants assert that Dr. Barstasis, the emergency room physician, was not present during the entire resuscitation efforts. We cannot fathom how this fact helps appellants' argument that Dr. Lukefahr regularly practices in the emergency room. Dr. Barstasis, the emergency room physician, would be the type of physician excluded from the statute because of his regular practice of emergency medical care. Appellants do not dispute that Dr. Lukefahr was not present in the emergency room when the infant arrived, nor do they dispute Dr. Lukefahr's assertion that he was visiting his own patient on a floor of the hospital when he responded to the emergency call. We find no merit in appellants' contention that Dr. Lukefahr regularly practiced medicine in the emergency room setting, particularly in the absence of summary judgment proof sufficient to raise a fact question.

■ The fourth exception in the statute applies to care administered "by an admitting physician or a treating physician associated by the admitting physician of the patient bringing a health-care liability claim." Although there is no admitting physician in the fact scenario before us, appellants argue that because Dr. Lukefahr "treated" the infant, he became a treating physician within the meaning of this fourth exception. This interpretation of the statute fails for two reasons. First, to say that any physician who assists in an emergency automatically becomes a treating physician would obviously frustrate the purpose of the statute, that purpose being to encourage physicians, and anyone else, to render aid in an emergency without fear of potential liability. *See* Robert A. Mason, *Good Samaritan Laws—Legal Disarray: An Update*, 38 MERCER L.REV. 1439, 1440–41 (1987) (noting original fears that such aid would result in malpractice suits and higher premiums for professional liability insurance). Secondly, the treating physician is referenced in the statute only with regard to the admitting physician. An admitting physician is a physician who admits a patient for care in the hospital, and in our facts, there is no such physician. The infant may later have been admitted to Texas Children's Hospital after the incidents at the emergency room of Bayshore Medical Center, but Dr. Lukefahr's involvement does not rise to the level of admitting the infant into a hospital.

■ The good samaritan statute diminishes the standard of care by requiring wanton or willful negligence before it will permit liability. Act approved June 16, 1977, 65th Leg., R.S., ch. 817, 1977 Tex.Gen.Laws 2039, 2054 (amended 1993) (current version at TEX. CIV.PRAC. & REM.CODE ANN. § 74.001(a) (Vernon Supp.1994)). Thus, to complete his summary judgment burden of establishing every element of his affirmative defense, Dr. Lukefahr must show his acts were not wanton or willful acts of negligence. This level of negligence is inherently contradictory in that negligence does not include the element of intent, whereas conduct defined as willful and wanton incorporates some measure of intent. *See Baskin v. Mortgage and Trust, Inc.*, 837 S.W.2d 743, 746 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (willful misconduct includes element of intent); *Brown v. Lun-*

*dell,* 334 S.W.2d 616, 619–20 (Tex.Civ.App.—Amarillo 1960), *aff'd* 162 Tex. 84, 344 S.W.2d 863 (1961) (defining wanton misconduct as comprising element of conscious conduct); *Michels v. Crouch,* 122 S.W.2d 211, 214 (Tex. Civ.App.—Eastland 1938, no writ) (negligence does not entail willful or intentional wrong). Despite the apparent incongruity, it is obvious the legislature meant to exclude outrageous acts rising to the level of conscious indifference. *See Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 916–20 n. 25 (Tex. 1981) (describing willful and wanton disregard as "entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons affected by it"). We find appellee's affidavit establishes such lack of wanton negligence. Thus, we find appellee established as a matter of law his affirmative defense under the good samaritan statute. Point of error one is overruled.

■ Appellants' closely related second point of error asserts that they raised fact questions precluding the trial court's granting summary judgment. In support of their argument, appellants rely on the affidavit of Dr. Stephen Whitney that was submitted to the court, for the first time, in appellants' motion to set aside the summary judgment. The trial court denied the motion. Appellants do not state a point of error on the denial of the motion to set aside the summary judgment, but assert only that the initial granting of the summary judgment was erroneous. Dr. Whitney's affidavit and deposition testimony was not before the trial court at the hearing on the motion for summary judgment. The trial court heard the motion on May 4, 1992, the motion having been served on appellees on December 18, 1991. The motion to set aside the summary judgment was filed one year later. In fact, when the trial court granted the summary judgment, appellants had not even taken the deposition of Dr. Whitney. Rule 166a(c) provides that the trial court can render summary judgment only on the evidence before it at the time of the hearing. Thus, Dr. Whitney's testimony did not comprise appellants' summary judgment proof and, therefore, is not part of the record before us in determining whether the summary judgment was properly granted. *See White v. Wah,* 789 S.W.2d 312, 318 (Tex.App.—Houston [1st Dist.] 1990, no writ) (holding doctor's affidavit filed with motion for new trial and not on file at time of summary judgment was not before appellate court in reviewing summary judgment proof).

■ The only testimony submitted by appellants in contesting the motion for summary judgment was the testimony of the various family members as to the sequence of events on the day the infant was brought to Bayshore Medical. Layperson testimony cannot controvert medical expert testimony on issues concerning a physician's standard of care. *Anderson v. Snyder,* 808 S.W.2d 54, 55 (Tex.1991); *Rinando v. Stern,* 831 S.W.2d 459, 462 (Tex.App.—Houston [14th Dist.] 1992, no writ) (plaintiff's own affidavit not sufficient evidence to rebut doctor-defendant's deposition submitted as expert testimony); *see also Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965) (layperson testimony cannot raise fact question in medical malpractice case). Because appellants presented no expert testimony to raise a relevant fact question countering Dr. Lukefahr's affidavit setting out the standard of care, Dr. Lukefahr's affidavit was uncontroverted. Point of error two is overruled.

In point of error three appellants contend that Dr. Lukefahr's affidavit was insufficient summary judgment proof for three reasons. Appellants contend that the affidavit failed to establish the existing standard of medical care, that the affidavit was contradictory and inconsistent, and that the affidavit was controverted by appellants' expert testimony and the testimony of family member-appellant Connie Viscaino. We have already discussed the reasons why appellants' expert testimony is not before us on appeal and why appellants' layperson testimony was insufficient to raise a fact question concerning appellee's expert testimony. Thus, we address here only the first two instances appellants represent as manifesting the insufficiency of appellee's affidavit.

■ Appellants assert that appellee failed to set out and satisfy the standard of

medical care. As discussed in point of error one, the purpose of the good samaritan statute is to lower the standard of care in order to encourage both certain medically-trained persons and laypersons to render aid in emergency situations. Thus, the statute provides a waiver for acts constituting ordinary negligence. Only wanton and willful acts of negligence will be subject to liability, and we find no hint of any act in appellee's affidavit manifesting conscious indifference as to the acts he took in rendering emergency aid.

Appellants also argue that the affidavit is inconsistent and contradictory. This complaint is based on rule 166a(c) of the Texas Rules of Civil Procedure which permits as summary judgment proof the testimony of an interested witness if that testimony is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been easily controverted." TEX.R.CIV.P. 166a(c). The crux of appellants' argument, in this respect, amounts to a typographical error in the affidavit in which another patient's name is listed in only one instance throughout the affidavit. This error does not amount to the kind of inconsistency rendering the entire affidavit insufficient. There remains no question that appellee was referring at all times to the same patient and the same factual circumstances.

Inconsistency must be avoided in an affidavit because such differences render an affidavit unclear and equivocal when the entire purpose of an affidavit is to set forth a definitive statement of facts based on personal knowledge. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984) (stating rule that affidavit must be based on personal knowledge). A mere typographical error, when viewed in the context of the entire affidavit, is not an inconsistency if it causes no confusion. Rather, the kind of inconsistency prohibited by the rule is an affiant's stating equivocating positions which do not serve to clarify the pertinent issues in the case for which the affidavit is being offered. *See Hunte v. Hinkley,* 731 S.W.2d 570, 571 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (finding summary judgment evidence provided conflicting dates of visit to

doctor's office was inconsistency but did not raise fact question). We cannot find how this error is so irreconcilable or illogical as compared to the entirety of the evidence so as to hold the affidavit inconsistent within the meaning of rule 166a(c).

A recent case applying the good samaritan statute demonstrates the nature of an impermissible contradiction envisioned by 166a(c) in the case of an affidavit submitted by an emergency medical technician (EMT). *Wheeler v. Yettie Kersting Memorial Hosp.,* 866 S.W.2d 32, 50–51 (Tex.App.—Houston [1st Dist.] 1993, writ n.w.h.). *Wheeler,* a case also involving very tragic facts, concerned a woman who brought suit against various parties for the death of her baby who suffocated during an alleged negligent delivery by the EMTs who had undertaken to transport her 90 miles to Galveston for the delivery of her baby.

As part of the EMTs' summary judgment proof, one EMT stated he had the authority to refuse to transport the patient and, yet, at another point also stated he did not have such authority. Indeed, this case provides the only insight into what kind of proof suffices to prove a defendant did not act willfully or wantonly negligent. A significant difference between the instant case and *Wheeler* is the existence of expert testimony in *Wheeler* that controverted the EMTs' testimony that they tried to clear an airway for the baby to breathe. The instant case has no such proof questioning whether there was wanton negligence by Dr. Lukefahr, and we find no such internal contradictions so as to dismiss the proof as insufficient.

In addition, appellants assert that the affidavit is contradictory because Dr. Lukefahr asserts he is familiar with the standard of care yet does not cite any credentials for practicing emergency medicine. This contention would force any defendant asserting the affirmative defense of the good samaritan statute into a "catch–22": Dr. Lukefahr cannot state credentials for emergency medicine as he does not regularly practice emergency medicine; were he to make such assertions, the good samaritan statute would be inapplicable as to him. We find the affi-

davit tracks the language approved in *White v. Wah,* 789 S.W.2d 312 (Tex.App.—Houston [1st Dist.] 1990, no writ). Just as in *White,* Dr. Lukefahr's affidavit states he is familiar with the type of care rendered to patients such as the infant and that his acts pursuant thereto were in accordance with that standard and would have been used by any reasonably prudent physician in the same or similar circumstances. *See Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex.1977) (stating required standard of care as being that of "reasonable and prudent member of the medical profession"). In language almost identical to that expressly approved in *White,* Dr. Lukefahr's affidavit denied the complaints in plaintiffs' petition and asserted no act of his in administering emergency aid contributed to causing the death of the infant. We thus find the uncontroverted summary judgment proof sufficient and overrule point of error three.

The judgment of the trial court is affirmed.