Karl MOORE, Individually, as Next Friend of Tanner James Moore, a Minor Child and as Representative of the Estate of Julia Moore, Appellants,

v.

Manuel TREVIÑO, Jr., James Anthony Gonzales, Donald Spacheck and David Laroy Peters, Appellees.

No. 04–02–00074–CV.

Court of Appeals of Texas, San Antonio.

Nov. 20, 2002.

Rehearing Overruled Dec. 11, 2002.

John N. Tyler, Tyler & Peery, San Antonio, for Appellant.

Jacqueline M. Stroh, Crofts & Callaway, P.C., Deborah L. Klein, Asst. City Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, SANDEE BRYAN MARION, Justice.

Opinion by ALMA L. LÓPEZ, Justice.

Appellant Karl Moore ("Moore") appeals from summary judgment in favor of appellees Manuel Treviño, James Gonzales, Donald Spachek and David Peters. Appellees are all emergency medical service personnel who treated Moore's wife, Julia Moore ("Julia"). In this case, we must decide whether, as a matter of law, the Good Samaritan Statute as codified under Texas Civil Practice and Remedies Code

section 74.002 applies to emergency medical service personnel.[1] We hold that it does, and therefore a party must show that such individuals acted wilfully or with wanton negligence in order to be liable for civil damages for an act performed in administering emergency care. Accordingly, we affirm the summary judgment on this basis. Appellees, as cross-appellants, assert that the trial court erred in failing to award costs pursuant to Texas Rule of Civil Procedure 131. We agree and modify the judgment accordingly.

## BACKGROUND

This is a tragic case. On June 21, 1998, Treviño and Gonzales were dispatched to a local restaurant as a result of alleged seizures experienced by Julia that evening. The dispatch report indicated that Julia was conscious and breathing. According to their affidavits, when Treviño and Gonzales arrived, Julia was not breathing, had no pulse, and her lips were bluish in color. Treviño attempted CPR. He then asked Gonzales to retrieve additional equipment from their unit. Following Advanced Cardiac Life Support Protocol, Treviño administered epinephrine and intubated Julia. Treviño checked Julia again and obtained a pulse. About this time, a second emergency unit arrived with Peters and Spachek. Peters and Spachek assisted in placing Julia in Treviño's unit. Spachek rode with Treviño while Gonzales drove to Southwest Texas Methodist Hospital. Peters followed. According to hospital medical records, the endotracheal tube in Julia was "pulled back" about three to four centimeters because she was not breathing and her skin was a bluish color. Upon adjusting the tube, Julia became more pink. Although she was resuscitated, further test-

ing revealed she had sustained a cerebral hemorrhage. Julia's family decided to cease all life support measures based upon her previously expressed wishes that she never wanted to be connected to life support. Julia died on June 27, 1998, six days after being admitted to the hospital. Moore subsequently sued Treviño, Gonzales, Spacheck, and Peters, individually, for negligence and gross negligence. Appellees each moved for summary judgment on the basis that there was no evidence they acted wilfully or wantonly as required by section 74.002. Moore responded by asserting that section 74.002 did not apply to appellees. The trial court rendered summary judgment in favor of the appellees, but did not award them costs. All parties appealed.

## THE GOOD SAMARITAN STATUTE

■ Section 74.002 of the Good Samaritan Statute, entitled "Unlicensed Medical Personnel," provides the following:

> Persons not licensed in the healing arts who in good faith administer emergency care as emergency medical service personnel are not liable in civil damages for an act performed in administering the care unless the act is wilfully or wantonly negligent. This section applies without regard to whether the care is provided for or in expectation of remuneration.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.002 (Vernon 1997).

On appeal, Moore asserts section 74.002 does not shield the appellees from liability for two reasons. First, he interprets section 74.002 as applying only to "unlicensed" medical personnel. Because appellees are licensed,[2] he concludes that

---

1. In this opinion, we use the term "emergency medical service personnel" to refer to paramedics and emergency medical technicians alike.

2. The appellees were certified paramedics at the time they treated Julia. Moore asserts that "certified" and "licensed" are interchangeable terms, and in their depositions,

section 74.002 has no application. Second, Moore interprets section 74.002 as applying only to individuals who voluntarily administer emergency care. Because appellees are paid to administer emergency care, Moore concludes that section 74.002 does not apply. Based on his interpretation of section 74.002, Moore contends he was not required to provide evidence that appellees acted wilfully or wantonly in order to establish liability.[3] We disagree with both of these interpretations. There is no direct case law on this issue;.[4] accordingly, this is an issue of first impression.[5]

■■■■ In construing a statute, the court's purpose is to give effect to the Legislature's intent. *Cash America Int'l Inc. v. Bennett,* 35 S.W.3d 12, 16 (Tex. 2000); *Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999). To determine legislative intent, courts may consider the language of the statute, the legislative history, the nature and object to be obtained, and the consequences that would follow from alternative instructions. *In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 380 (Tex.1998); *see also* Tex. Gov't Code Ann. § 311.023 (Vernon 1998). However, prior laws and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear when considered in its entirety, unless there is an error. *See Rylander,* 6 S.W.3d at 284. Moreover, the legislative intent should be determined from the entire act and not simply from isolated portions. *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex.1998). A statute must be read as whole and interpreted so that every part is given effect. *See id.* Finally, where language in a statute is unambiguous, we seek the intent of the Legislature as found in the plain and common meaning of the words and terms used. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994).

### Healing Arts

■■■■ In support of his argument that licensed emergency medical service personnel are not afforded protection under section 74.002, Moore focuses on that section's title: "Unlicensed Medical Personnel." However, a statute's title does not limit or expand the meaning of the statute. *See* Tex. Gov't Code Ann. § 311.024. While the title may be considered as a guide to showing legislative intent, it has no enacting force. *See High Plains Natural Gas*

---

appellees acknowledged that they and the State make no distinction between being "certified" and being "licensed."

3. The record reflects that appellees moved for summary judgment on multiple grounds, including official immunity. Moore responded to each motion. In particular, he asserted the issue raised on appeal and also asserted that if section 74.002 applied there was sufficient evidence to raise a question of fact on whether appellees acted wilfully or wantonly. On appeal, Moore limits his issue to whether appellees fall under the protection of section 74.002 as a matter of law. Therefore, we address that issue only.

4. In *Wheeler v. Yettie Kersting Memorial Hosp.,* 866 S.W.2d 32 (Tex.App.-Houston [1st Dist.] 1993, no writ), the appellate court addressed whether there was sufficient evidence to establish a question of fact that paramedics acted willfully or wantonly for purposes of section 74.002. *Wheeler* is not dispositive of the instant matter because, there, the parties and the court assumed section 74.002 applied to emergency medical technicians. *See id.* at 50–51.

5. This court has previously addressed the application of the Good Samaritan Law as encompassed under section 74.001. *See Howell v. City Towing Assocs., Inc.,* 717 S.W.2d 729 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.). The court held that 74.001 did not apply to a tow truck driver who failed to drive a customer to the hospital and instead notified his dispatcher for EMS. *See id* at 732.

*Co. v. Railroad Comm'n of Texas,* 467 S.W.2d 532, 539 (Tex.Civ.App.-Austin 1971, writ ref'd n.r.e.). Therefore, we must look to the language of section 74.002. In section 74.002, the word "licensed" is used in connection with the term "healing arts." Thus, the plain language of section 74.002 reflects that it applies to "persons [who are] not licensed in the healing arts." Accordingly, the issue is not whether appellees are licensed generally, but whether they are licensed in the "healing arts."

The Good Samaritan Statute does not define the phrase "healing arts"; thus, for purposes of statutory interpretation and construction, we look to other statutes that define the term. *See* TEX. GOV'T CODE ANN. § 311.023(4). There are various statutory authorities to support the proposition that the term "healing arts" is synonymous with the practice of medicine or the services provided by a health care practitioner. *See* TEX. OCC.CODE ANN. § 104.002 (Vernon 2002) (defining "healing art"); TEX. INS.CODE ANN. § 20A.29(a) (Vernon 1981) (stating Texas Health Maintenance Organization Act does not authorize any person, other than a licensed physician or practitioner in the healing arts, acting within the scope of the person's license to engage directly or indirectly in the practice of medicine or a healing art); TEX. LOCAL GOV'T CODE ANN. § 243.004(3) (Vernon 1999) (exempting from Chapter 243 a business operated by or employing a licensed physician or licensed chiropractor engaged in practicing the healing arts); *see also* TEX.REV.CIV. STATS. ANN. ART. 4590i, § 1.03(3) (Vernon Supp.2002) (excluding emergency medical technicians from the definition of a "health care provider").

The most persuasive of these authorities is the Healing Art Identification Act found in Chapter 104 of the Texas Occupations Code. Chapter 104 defines the "healing arts" to include "any system, treatment, operation, diagnosis, prescription, or practice to ascertain, cure, relieve, adjust, or correct a human disease, injury, or unhealthy or abnormal physical or mental condition." TEX. OCC.CODE ANN. § 104.002. Individuals subject to Chapter 104 must identify on any form of written or printed identification the "healing art" they are licensed to practice. *Id.* § 104.003(a). Section 104.003 designates how practitioners subject to Chapter 104 must identify themselves. For example, a practitioner who is licensed by the Texas State Board of Medical Examiners and holds a doctor of medicine degree shall use the designations "physician or surgeon, M.D."; "doctor, M.D."; or "doctor of medicine, M.D." *Id.* § 104.003(b). Chapter 104 specifically applies to doctors of medicine, doctors of osteopathy, dentists, optometrists, chiropractors, and podiatrists. *See id.* § 104.003(b)-(g). Section 104.003 does not include emergency medical service personnel among its list of "healing art practitioners," nor does it include emergency medical services among the "healing arts."

Given the treatment of the "healing arts" as the practice of medicine or an equivalent practice in other statutes, we conclude that "healing arts" as used in section 74.002 does not encompass the services provided by emergency medical service personnel. Accordingly, emergency medical service personnel are "persons not licensed in the healing arts."

**Voluntary Emergency Care**

In support of his argument that section 74.002 applies only to volunteers who provide unpaid emergency care, Moore relies on the interplay between sections 74.001 and 74.002. Moore argues that section 74.002 is intended to protect police officers, firemen, security guards, lifeguards, and other persons who are not emergency medical personnel but who are

trained to provide emergency care. Moore's basis for this conclusion is that the purpose of the Good Samaritan Statute is to protect from liability those people who volunteer their services. We agree that the Good Samaritan Statute offers protection to individuals who voluntarily administer emergency care. *See Howell v. City Towing Assocs., Inc.,* 717 S.W.2d 729, 731 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.). We disagree that it protects *only* those individuals.

Section 74.001 of the Good Samaritan Statute, entitled "Liability for Emergency Care," provides that a higher standard of liability must be met for a person who in good faith administers emergency care at the scene of an emergency not in a hospital, other health care facility, or means of medical transport. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a) (Vernon Supp.2002); *see also Hernandez v. Lukefahr,* 879 S.W.2d 137, 141 (Tex.App.-Houston [14th Dist.] 1994, no writ). The statute also affords protection, in limited circumstances, where an emergency occurs in a hospital, other health care facility, or medical transport. *Id.* § 74.001(c). Section 74.001 expressly provides that it does not apply to care administered for or in expectation of remuneration. *Id.* § 74.001(b)(1). Section 74.001 also excludes persons who regularly administer care "in a hospital emergency room" unless that person is present for reasons unrelated to his or her work in administering health care. *Id.* § 74.001(c)(1); *see Hernandez,* 879 S.W.2d at 141 (holding section 74.001 applied to physician who rendered aid). Thus, the purpose of section 74.001 is to lower the standard of care in order to encourage certain medically trained persons and laypersons to render aid in emergency situations. *See Hernandez,* 879 S.W.2d at 141.

Although emergency medical service personnel, such as paramedics and EMTs, are not included within the scope of section 74.001 because they administer emergency care in return for remuneration, this does not automatically lead to the conclusion that they are not within the scope of section 74.002. Moore's interpretation of sections 74.001 and 74.002 ignores the last sentence of section 74.002 which, unlike section 74.001, states that section 74.002 applies without regard to whether the care is provided for or in expectation of remuneration. TEX. CIV. PRAC. & REM. CODE ANN. § 74.002. Thus, the fact that emergency medical service personnel are paid to render emergency care does not preclude application of section 74.002.

We also reject Moore's interpretation because it would lead to the unintended result that the same group of people would be covered under both section 74.001 and 74.002. In other words, Moore would have this court hold that both sections only afford protection from liability to a single group of individuals: those who voluntarily administer emergency care. Such an interpretation would render section 74.002's application "without regard to whether the care is provided for or in expectation of remuneration" mere surplusage and without effect. Such an interpretation would confound the general presumption that the words and phrases used by the Legislature in section 74.002 have been used intentionally, with a meaning and for a purpose. *See Nichols v. William A. Taylor, Inc.,* 662 S.W.2d 396, 399 (Tex.App.-Corpus Christi 1983, no writ).

**Conclusion**

We hold that section 74.002 shields emergency medical service personnel from liability, unless they act wilfully or with wanton negligence. On appeal, Moore does not argue that the summary judgment evidence raises a question of fact that appellees acted wilfully or wantonly. Therefore, we need not reach that issue,

and we overrule Moore's sole issue on appeal.

### Costs

 On cross-appeal, appellees contend the trial court abused its discretion in failing to award them costs pursuant to Texas Rule of Civil Procedure 131. Under Rule 131, a successful party in a suit is entitled to recover all the taxable costs it incurred. A "successful party" is one who obtains a judgment of a competent court of jurisdiction vindicating a civil claim of right. *See State Farm Mut. Auto. Ins. Co. v. Grayson*, 983 S.W.2d 769, 770 (Tex.App.-San Antonio 1998, no pet.). A party is "successful" based upon its success on the merits and not on whether damages are awarded. *See Johns v. Ram-Forwarding Inc.*, 29 S.W.3d 635, 638 (Tex.App.-Houston [1st Dist.] 2000, no pet.). For costs to be taxed otherwise, the trial court must find good cause and state the reasons on the record. Tex.R. Civ. P. 141; *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376–77 (Tex.2001). We review a trial court's determination of good cause and assessment of court costs under an abuse of discretion standard. *See State v. Castle Hills Forest, Inc.*, 842 S.W.2d 370, 372 (Tex.App.-San Antonio 1992, writ denied).

In their motions for summary judgment, appellees specifically requested that they be awarded costs pursuant to Rule 131. The trial court summarily denied the request without reason. The record does not reflect that appellant offered any justification for not awarding costs to the appellees, nor does the record indicate that appellees engaged in conduct to support the court's ruling. *See* Tex.R. Civ. P. 141 (allowing court to assess costs other than as provided by Rule 131 if "good cause" is shown); *see also Bethune*, 53 S.W.3d at 377 (stating good cause means the prevailing party unnecessarily prolonged the pro-ceedings, unreasonably increased costs, or did something that should be penalized). Because appellees were the prevailing parties below and "good cause" for not awarding costs to them is not stated on the record, the trial court abused its discretion in failing to award appellees costs pursuant to Rule 131. We sustain appellees' cross-issue and reform the trial court's judgment to reflect appellees' recovery of their costs.

### Conclusion

With this opinion we hold emergency medical technicians and paramedics are included within the scope of section 74.002, which requires that such individuals must have acted wilfully or with wanton negligence in order to be liable in civil damages. We reach this holding cognizant of the tragic events surrounding Julia Moore's death. However, just as public policy supports protecting medical personnel who voluntarily render emergency aid, public policy also supports affording the same protection to the individuals upon whom society relies on for emergency medical care, individuals such as the appellees. We affirm the judgment of the trial court as modified.