**Affirmed and Memorandum Opinion filed February 7, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00916-CV

## CHARLES J. GERMANY JR., Appellant

## V.

## WELLS FARGO BANK, NA, Appellee

**On Appeal from the 458th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 17-DCV-239533**

## MEMORANDUM OPINION

Wells Fargo sued Charles Germany, alleging a single cause of action for breach of contract. After Germany filed a pro se answer, Wells Fargo moved for a traditional summary judgment. Germany did not respond to Wells Fargo's motion, and the trial court granted summary judgment in Wells Fargo's favor. Because Germany did not file a response, the only question we consider on appeal is whether Wells Fargo satisfied its burden of showing that it was entitled to judgment as a matter of law. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343

(Tex. 1993) ("If a non-movant fails to present any issues in its response or answer, the movant's right is not established and the movant must still establish its entitlement to summary judgment. The effect of such a failure is that the non-movant is limited on appeal to arguing the legal sufficiency of the grounds presented by the movant.").

## STANDARD OF REVIEW

Our review of the summary judgment is de novo. *See Katy Venture, Ltd. v. Cremona Bistro. Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam). To prevail on its traditional motion for summary judgment, Wells Fargo had to establish that there was no genuine issue of material fact as to each element of its claim such that it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). In deciding whether there is a genuine issue of material fact, we consider all of the evidence in the light most favorable to Germany, indulging every reasonable inference and resolving any doubts in his favor. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

## MOTION FOR SUMMARY JUDGMENT

Wells Fargo argued in its motion that it was entitled to judgment on its contract claim because Germany entered into a consumer credit card agreement with Wells Fargo, and Germany breached that agreement by defaulting on his payments.

Wells Fargo supported that claim with the affidavit of a loan adjustor, who testified that he worked for Wells Fargo and that he had acquired personal knowledge of the business records involved in this case. The loan adjustor attached a consumer credit card agreement to his affidavit, and he testified that it was a true and correct copy of the agreement that Germany had entered.

The loan adjustor also attached two credit card statements associated with Germany's account, one dated from 2016, and the other dated from 2017. The loan adjustor testified that Germany's last payment to his account was reflected in the 2016 statement. Because Germany had not remitted any additional payments since that time, the loan adjustor testified that the entire balance on Germany's account had been accelerated according to the terms of the agreement. The loan adjustor cited the account balance on the 2017 statement as proof of the amount that was due and owing.

Now represented by appellate counsel, Germany argues that Wells Fargo's motion is insufficient because the summary-judgment evidence is not "free from contradictions and inconsistencies." *See* Tex. R. Civ. P. 166a(c). Germany focuses on three evidentiary issues in particular.

## CREDIT CARD AGREEMENT

The first issue relates to the loan adjustor's affidavit testimony that Germany "entered into an agreement for a CORE PLATINUM Account." Germany contends that this testimony is inconsistent with the agreement itself because the agreement does not reflect that Germany obtained a CORE PLATINUM Account.

The agreement is silent about many things, and appears to have been drafted with standardization in mind. For example, it does not bear Germany's name or even require his signature as a condition to contract formation. By its own terms, Germany is deemed to have accepted the terms of the agreement "by using or activating [his] Account." *See Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) ("Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent.").

In keeping with its boilerplate character, the agreement has a generally worded heading: "Consumer Credit Card Customer Agreement & Disclosure Statement." Beneath that heading, there is a short subheading—"Visa® or MasterCard®"—followed by terms that are applicable to both types of credit cards, unless otherwise stated.

The agreement does not indicate which type of credit card was issued to Germany. In fact, the agreement defines the word "Card" as "any credit card we issue to use your Account." The word "Account" is also defined in the barest of terms as "your credit card account."

Germany correctly observes that the agreement does not contain the words "CORE PLATINUM," but he fails to explain how that omission creates an inconsistency. The agreement does not affirmatively state that Germany obtained an account with Wells Fargo that bore a different title. Absent that sort of discrepancy, we perceive no conflict between the generally worded agreement and the loan adjustor's more specifically worded affidavit. *See Hernandez v. Lukefahr*, 879 S.W.2d 137, 143 (Tex. App.—Houston [14th Dist.] 1994, no writ) (explaining that the types of inconsistencies prohibited by Rule 166a(c) are those that create "equivocating positions which do not serve to clarify the pertinent issues in the case").

## CREDIT CARD STATEMENTS

The next issue relates to differing descriptions of Germany's account in the loan adjustor's affidavit and the two credit card statements. The loan adjustor testified that Germany had a CORE PLATINUM Account ending with the numbers 5236. Those account numbers are accurately reflected in the 2017 statement, but not in the 2016 statement, which represented that Germany's account ended with the numbers 5921.

4

We agree with Germany that this evidence gives rise to a discrepancy, but the discrepancy is immaterial. The loan adjustor did not testify that Germany's account ended with the numbers 5236 at the time his account was opened, or that his account has always ended with those numbers. Rather, the loan adjustor testified that Germany's account "ends"—in the present tense—with the numbers 5236. That testimony comports with the account number appearing on the 2017 statement, which the loan adjustor described as the "last statement" that was sent to Germany.

The loan adjustor did not explain the discrepancy between the two credit card statements, but we are aware that financial institutions can change account numbers when the need arises. *See, e.g.*, *Wells Fargo Bank, N.A. v. Blackburn*, No. 02-10-00166-CV, 2011 WL 346951, at *1 (Tex. App.—Fort Worth Feb. 3, 2011, no pet.) (mem. op.) (numbers were changed after the account holder closed and then reactivated the account); *United States v. Parson*, 599 F. Supp. 2d 592, 605 (W.D. Pa. 2009) (numbers were changed after the account holder expressed a concern about identity theft). The mere fact that a change may have occurred here does not raise a genuine issue of material fact because there was uncontroverted evidence that Germany owned the account ending in 5236 and Wells Fargo's claim for damages was limited to the balance due under that account. *Cf. Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *11 (Tex. App.—Austin July 29, 2008, no pet.) (mem. op.) (factual discrepancies regarding the number of times that an attorney communicated with a third party, who initiated those disputed communications, and how a written agreement was delivered to the third party did not preclude a summary judgment on the attorney's defense that he was entitled to attorney immunity).

Germany also contends that there is an inconsistency because both credit card statements indicate that he has a Wells Fargo Visa Account, as opposed to a CORE

PLATINUM Account. However, neither statement actually identifies the title of Germany's account. The statements merely contain logos for Wells Fargo and Visa. The Visa logo permits a reasonable inference that Germany was issued a Visa credit card, but nothing in the statements identifies which type of Visa credit card. Because the statements are silent regarding the title of Germany's account, we do not perceive any inconsistency with the loan adjustor's affidavit testimony that Germany obtained a CORE PLATINUM Account. *See Blackburn*, 2011 WL 346951, at *3 (indicating that Visa has a "Platinum" line of credit cards).

## ACCELERATED BALANCE

Germany's final issue relates to the loan adjustor's affidavit testimony that Wells Fargo is owed an accelerated balance of $24,809.38. That figure matches the total balance of Germany's account as reflected in the 2017 statement, but Germany argues that there is a conflict because the same statement shows a minimum balance due of only $3,579.38. In a related complaint, Germany argues that the loan adjustor's testimony is conclusory because, even if he owned the account, there is insufficient proof that the total balance actually became due and owing. We address these points in reverse order.

There is uncontroverted evidence that Wells Fargo had a right to accelerate the balance of Germany's account. The credit card agreement provided that if Germany defaulted by "fail[ing] to pay a Minimum Payment by the Payment Due Date," then Wells Fargo's rights included, but were not limited to, "requiring the immediate payment of the Outstanding Balance."

The 2017 statement proved that Germany had defaulted. A notice included in that statement said the following:

> Our records indicate that your account is in default for failure to make payments due. Unless the past due amount shown on this month's

6

billing statement is received by the end of the present calendar month, immediate payment in full of your account may be required (this is also called "acceleration").

There is no evidence, however, that Wells Fargo gave notice to Germany that his account balance had actually been accelerated. Without such evidence, Germany argues that Wells Fargo did not satisfy its burden of showing that the balance was accelerated.

Assuming for the sake of argument that Wells Fargo was required to give notice of acceleration, we conclude that proof of this notice was unnecessary because Wells Fargo pleaded that all conditions precedent had been performed and Germany failed to specifically deny that notice had been given. *See* Tex. R. Civ. P. 54 ("In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party."); *Miller v. Univ. Sav. Ass'n*, 858 S.W.2d 33, 36 (Tex. App.— Houston [14th Dist.] 1993, writ denied) (holding that a summary-judgment movant was not required to prove the requisites for accelerating a note because there was no specific denial of conditions precedent in the nonmovant's answer). Accordingly, the loan adjustor's testimony was not conclusory, and Wells Fargo's motion was not insufficient for lacking more proof of acceleration.

The only remaining complaint is Germany's argument that the evidence was inconsistent. Germany contends that his account balance could not have been accelerated as the loan adjustor had testified because the 2017 statement did not reflect that the entire account balance was due and owing, and because the notice attached to that statement merely warned that immediate payment in full "may be required." But the 2017 statement predated the loan adjustor's affidavit by more than

7

three months. That statement does not contradict the loan adjustor's subsequent testimony that Germany's balance "has been accelerated" as a result of his failure to remit payments. *Cf. Hammer v. Powers*, 819 S.W.2d 669, 672 (Tex. App.—Fort Worth 1991, no writ) (affiant's testimony that testatrix had testamentary capacity two days before the will was executed was not contradicted by testimony that the testatrix had been hospitalized for alcoholism seven days before the will was executed).

## CONCLUSION

Wells Fargo produced uncontroverted evidence, free from any contradictions or inconsistencies, that Germany entered into a credit card agreement; that Germany defaulted under that agreement; and that $24,809.38 is due and owing as a result of Germany's breach. Based on this uncontroverted evidence, we conclude that Wells Fargo established that it was entitled to judgment as a matter of law on its claim for breach of contract.

We therefore affirm the trial court's judgment.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Jewell, and Hassan.