**Affirmed and Memorandum Opinion filed June 30, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00994-CV

**ANDREW T. VO, INDIVIDUALLY AND D/B/A LARRY VO, VIET LE, TAM VAN LE, AND VO-LE, INC., Appellants**

**V.**

**HO KIM DOAN, Appellee**

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-19358**

## M E M O R A N D U M   O P I N I O N

This appeal is brought by Andrew T. Vo, Individually and d/b/a Larry Vo, , Viet Le, Tam Van Le, and Vo-Le, Inc. (collectively the "Vo Parties"), following the reinstatement of a jury verdict in favor of Ho Kim Doan. We affirm.

## I. BACKGROUND

On March 28, 2007, Ho Kim Doan filed suit under the Jones Act for injuries allegedly sustained while working onboard the Vo Parties' vessel, the "Larry Vo," in July 2006. On July 14, 2006, as shrimp nets were being reeled in, a rope snapped causing the "turtle head"[1] to fall and come into contact with Doan. Claiming he suffered injuries, Doan filed suit in March 2007.

Trial began September 22, 2009. Following the Vo Parties' opening statement, Doan's counsel moved for mistrial because the Vo Parties' counsel informed the jury that there was no insurance coverage for the loss claimed. The trial court took the motion under advisement and trial continued to a verdict.

The jury found no negligence on the part of the Vo Parties caused Doan's injuries, and the vessel was unseaworthy at the time but that was not a proximate cause of Doan's injuries. Accordingly, the jury awarded no damages for past or future physical pain and suffering, past or future mental anguish, past income loss, future impairment of earning capacity, or past or future medical expenses.

The jury found the Vo Parties owed Doan maintenance and cure beginning July 19, 2006, and that Doan reached maximum cure on July 5, 2008. The jury awarded $21,480.00 for maintenance and $51,551.40 for cure. The jury further found the Vo Parties acted "willfully, arbitrarily, or with callous disregard in failing to pay maintenance and cure" and awarded $4,000.00 in attorney's fees. Lastly, the jury awarded $57,000.00 in punitive damages.

---

[1] A "turtle head" is a device that allows a captured sea turtle to escape when caught in a net.

Following the jury's verdict, Doan re-urged his motion for mistrial which was granted by the trial court on October 29, 2009. The case was reset for trial, discovery was re-opened, and pre-trial deadlines were established.

On September 1, 2012, Doan died of causes unrelated to this case. On September 13, 2012, Doan's counsel filed a motion to enter final judgment, and a motion to reconsider and withdraw the order granting mistrial. On September 16, 2014, the trial court withdrew the order of mistral and entered final judgment awarding damages pursuant to the jury's findings in the amount of $134,531.40 and "all interest permitted by law." Subsequently, the trial court denied the Vo Parties' motion for judgment notwithstanding the verdict and for new trial. The Vo Parties then brought this appeal.[2]

## II.    SUFFICIENCY OF THE EVIDENCE

### A. Injury

The Vo Parties' fourth issue contends the evidence is insufficient to support the jury's finding that Doan was injured while in service of the vessel. We first note that the Vo Parties fail to cite any authority. Further the Vo Parties rely upon evidence that was not before the jury. We limit our review to the evidence before jury at the time the jury acted. *See Baty v. Bowen, Miclette & Britt, Inc*., 423 S.W.3d 427, 435 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Univ. of Tex. v. Morris*, 162 Tex. 60, 344 S.W.2d 426, 429 (1961), holding that appellate court, in determining correctness of a trial court ruling, does not consider events that occurred subsequent to the ruling unless they deprive the appellate court of jurisdiction, and *Stephens County v. J.N. McCammon, Inc*., 122 Tex. 148, 52 S.W.2d 53, 55 (1932)

---

[2] Doan's motion for costs filed in this court that was carried with the case on October 9, 2015, is denied.

stating that "[w]hen an appellate court is called upon to revise the ruling of a trial court, it must do so upon the record before that court when such ruling was made").

Doan testified that he went to work on board the Larry Vo at the beginning of the shrimping season in 2006.[3] The water pump broke and the boat went to Freeport. While the boat was there, Doan jumped down to the sea and swam. The boat was in Freeport for a few hours and then went back to sea.

A few days later, as the net was being pulled up, the rope became stuck in the pulley and broke, and the turtle head fell on Doan. Doan stated he was also struck with a "big hook." Doan was hit on the back of the head and the hands and fell to the deck. According to Doan, one of his fingers was permanently disfigured. Doan testified that when he was struck, he "couldn't see anything" and both of his ears were humming. Two men helped him to the cabin because he almost blacked out, and he stayed there about thirty minutes. Doan stated when he regained consciousness, his body was covered with Ben Gay. Doan asked Captain Le to take him home to see a doctor about his head. Le said they could not go back at that time. Doan did some light work for several days and, about four or five days later, he felt a pain in his head and again asked Le to take him to a doctor. According to Doan, Le took him back to port because the injury became so dangerous. Doan said, "it was bleeding inside [his] head . . . and the doctors try to suck it out, but they couldn't do it." Doan agreed he suffered no broken bones but said, "there's some crack on my neck and my finger's crooked. And the – there's some blood clot inside."

Doan denied he failed to get off the boat at any time after the accident when it came to port. When the boat came into port, Doan saw a doctor. He was given

---

[3] Doan testified with the assistance of an interpreter.

$500 and used the money for medication. Doan testified he notified the Coast Guard of the accident.

According to Doan, he had no problems with his neck, head or back before the accident. Doan testified he had problems with pain radiating through the bone on his arms and shoulder and since 2006 has suffered headaches. Doan testified there were things he could no longer do and that he was in physical pain.

Tam Le, the captain of the Larry Vo, testified they went to port on July 24th, because the pump broke down and Doan got off the boat on the 25th. Le did not witness the accident. However, he testified the rope to the turtle head broke and fell "on one place" then "bounced and hit the man." Le did not see a bruise on Doan, or that his head was swollen, and saw no cut or blood. Le asked Doan if he needed him to pull the boat back and Doan said, "No." They kept working for three days. Le saw Doan jump into the water the day after the accident. According to Le, they went to Freeport after the water pump broke. When Le asked Doan if he was hurt, Doan told him no. According to Le, Doan did not ask to be taken back and the owner instructed Le to return to port.

Hoa Nguc Vo, Le's wife, testified that she saw Doan a few days after the boat returned and he walked normally. A month later, Doan asked to be hired but they already had enough crew. Kim Lu, Andrew Vo's sister, also testified that about two months after the accident, Doan called about working on the Larry Vo again. A few months later, Hoa saw Doan at a supermarket. She overheard Doan tell someone, "I'm not injured. I just want to have some money."[4]

---

[4] Following their recitation of this testimony, the Vo Parties' brief states Doan testified to selling fish and shrimp to neighbors and "he testified that he loads up to 70 pounds of fish and shrimp onto his truck." However, Doan testified that his friends help load the fish onto the truck and "a few pounds, yes, I carry myself."

Hoa testified that Doan asked to borrow the $500 he was given, but she did not know about an injury. Written on the check is the word "medicine." The company never paid any maintenance to Doan or any medical bills. According to Hoa, they did not pay because Doan was not injured.

Ngoi Nguyen, a deckhand on the Larry Vo, testified they went to sea on July 7, 2006, and were at sea seven days before the accident. He did not see the rope break but saw the turtle head drop, bounce back, and hit Doan. Nguyen said it hit Doan on the shoulder, not his head or back, and Doan did not fall down, but sat down. A turtle head is thirty-two inches wide. On the day of the accident, because the net was empty, the weight of the turtle head was about eighty to ninety pounds.

Nguyen testified a person could not survive if the turtle head fell directly on him. The turtle head, according to Nguyen, cannot drop directly down, but at a forty-degree angle, because the weight of the net would pull it back to fall outside of the boat. According to Nguyen, "[i]t always drop down and hit the deck first and then bounce back to you." Nguyen testified that he was once hit by a turtle head and only suffered a little bruise. Nguyen got Doan some ointment. He saw a little red mark but no bruises, scratches, cuts, or blood. Doan's head appeared normal to Nguyen and when Nguyen asked how he was, Doan said nothing. Nguyen said he did not take Doan to the cabin because after fifteen or twenty minutes, Doan continued to work. For three days Doan continued his regular work, then they went to Freeport because the water pump was broken. Nguyen saw Doan jump into the sea to swim one day after the accident and he swam about five to ten minutes before Nguyen asked him to come up.[5]

---

[5] The claim in the Vo Parties' brief that Nguyen testified Doan "jumped off the boat and went swimming almost every day after the accident" is unsupported by the record.

Dr. Key, Doan's treating physician, testified that in light of the history given "of the heavy object striking him on the head, injuring his head and neck is consistent with . . . what the MRI and the EMG showed." Dr. Key testified that Doan had an injury to "3-4-, 4-5 and 5-6- disks, and that they were bulging into the anterior part of his cervical spine or the cord." According to Dr. Key, the "compression can cause a difficulty with the flow of the normal electrical activity of the spine." The bulging supported Doan's complaints. Dr. Key testified that Doan did not disclose any prior injuries to his cervical spine. Dr. Key agreed that based on reasonable medical probability, the injuries sustained by Doan were consistent with his report of being hit in the head in July of 2006.

The Vo Parties point to Doan's medical records, introduced at trial as Exhibits 13 and 15, as evidence contrary to the jury's finding. Exhibit 13 reflects that on an evaluation form for Mana MRI, LC, signed by Doan, "AUTO ACCIDENT" is checked for the query, "IS YOUR INJURY DUE TO" and the date of injury is entered as "9/19/06." On the patient history form, Doan circled "NO" on the question "Have you had surgery?" Exhibit 15 shows that Doan did have a past surgical history. Specifically, Doan had a right-knee arthroscopy on November 18, 2003, June 9, 2005, July 13, 2006, and August 24, 2006. The Vo Parties claim Doan failed to disclose these facts, but they were obviously contained in exhibits admitted at trial and therefore before the jury and known to the Vo Parties. Moreover, during closing argument the Vo Parties' counsel specifically referred to Doan's knee surgery.

We review the evidence for legal sufficiency under the *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005), standard—crediting evidence favoring the verdict if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Green v. Alford*, 274 S.W.3d 5, 16, 22-23 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *City of Keller*, 168 S.W.3d at

825–26, 827). We consider the evidence in the light most favorable to the challenged finding, and we indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822. In reviewing a factual-sufficiency challenge, we consider and weigh all the evidence in a neutral light and may set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Green*, 274 S.W.3d at 23 (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)).

The jury heard undisputed evidence that Doan was struck by the turtle head – whether directly or when it bounced back – and a report of the accident was filed with the Coast Guard. Doan stated he blacked out and asked to be taken to the doctor, twice, but Le and Nguyen testified to the contrary. Le and Nguyen testified that Doan went swimming once the day after the accident for no more than ten minutes, but Doan testified the swimming occurred before the accident. The jury heard undisputed evidence that Doan was given $500. Hoa testified that she was unaware of an injury but Doan claimed the money was to see a doctor and "medicine" was written on the check. Le, Hoa, and Nguyen testified they saw no evidence of injury and Hoa testified that she overheard Doan say he was not injured. Dr. Key testified that Doan had injuries consistent with the accident.

Because jurors are the sole judges of the credibility of witnesses and may choose to believe one witness and disbelieve another, we must not substitute our opinion for that of the jury. *See City of Keller*, 168 S.W.3d at 819. It is the role of the jury to resolve conflicts in the evidence and we must assume that jurors resolved all conflicts in accordance with their verdict. *Id.* at 820.

Considering the evidence in the light most favorable to the jury's finding, a reasonable juror could have found Doan was injured by the turtle head. Further, considering and weighing all the evidence in a neutral light, the jury's finding that

Doan was injured by the turtle head is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Accordingly, we conclude the evidence is legally and factually sufficient to support the jury's finding. The Vo Parties' fourth issue is overruled.

## B. Damages and Interest

The Vo Parties' eighth issue argues the damages awarded by the jury are excessive and/or unsupported by the evidence. Further, the Vo Parties claim Doan is not entitled to interest on the amounts awarded or, alternatively, interest should not accrue between the time the trial court granted the motion for a new trial and entered judgment on the jury's verdict. The Vo Parties again fail to cite any legal authority.

### 1. Cure

The Vo Parties' first argument is that the jury's award of $51,551.40 for cure was "inconsistent with other jury findings, unsupported in the record or not sufficiently supported, and includes an alleged future surgery." The Vo Parties make no references to the record and fail to inform this court which jury findings are inconsistent with the award. The record reflects $51,551.40 is the total amount of Doan's past medical bills, not including the estimate for future surgery. Thus, the record supports the jury's award for cure.

### 2. Maintenance

The Vo Parties next argue "the jury awarded maintenance of $21,480.00, which is supported by no or insufficient evidence." This constitutes the entirety of the Vo Parties' attack on the jury's award for maintenance. Although Dr. Key testified that Doan had not yet reached maximum cure, the jury found Doan was only entitled to maintenance for 716 days, from July 16, 2006, to July 5, 2008. Thus the

jury awarded $30 per day. The Vo Parties do not contest the jury's determination that $30 per day was a reasonable amount for maintenance. Since the only testimony regarding the length of time for which Doan was entitled to maintenance was greater than that awarded by the jury, we cannot say the evidence fails to support the jury's finding.

### 3. Attorney's Fees

The Vo Parties' complete argument against the award of attorney's fees is as follows: "There was no, or insufficient basis or evidence, to award any attorney[']s fees because Plaintiff failed to establish willful or arbitrary failure to pay maintenance and cure." The jury heard evidence that Doan told Le that he was injured and asked to be taken to a doctor. Le filed a report with the Coast Guard concerning the accident. When the boat docked and Doan went ashore, he was given $500 to either see a doctor or purchase medicine. Doan requested the payment of maintenance and cure and it was not paid. Hoa Vo testified maintenance and cure was not paid because Doan was not injured. We conclude there was evidence that the failure to pay maintenance and cure was a willful decision by the Vo Parties.

### 4. Punitive Damages

The Vo Parties then complain of the punitive-damages award as follows: "[f]urther, again, the award of $57,500.00 for punitive damages is inconsistent with other jury findings and supported by no or insufficient evidence. There was no or insufficient evidence of willful or wanton conduct." Again, the Vo Parties fail to clarify which jury findings they claim are inconsistent with the award. A seaman is entitled to seek punitive damages for his employer's alleged willful and wanton disregard of its maintenance and cure obligation. *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 165 (Tex. 2012) (citing *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 129 S. Ct. 2561, 174 L. Ed. 2d 382 (2009)). As noted above, the jury heard

10

evidence that Doan told Le that he was injured and asked to be taken to a doctor. Le filed a report with the Coast Guard concerning the accident. When the boat docked and Doan went ashore, he was given $500 to either see a doctor or purchase medicine. Doan requested the payment of maintenance and cure and it was not paid. Hoa Vo testified it was not paid because Doan was not injured.

The Vo Parties do not explain why this evidence fails to support the jury's finding that the Vo Parties' disregard of its maintenance and cure obligation was willful and wanton. Willful and wanton disregard is that "entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 916–20 n.25 (Tex.1981). *See also Hernandez v. Lukefahr*, 879 S.W.2d 137, 142 (Tex. App.—Houston [14th Dist.] 1994, no writ). The record contains evidence from which the jury could have found that the Vo Parties knew Doan was injured and when presented with a claim for maintenance and cure refused to pay it. From that evidence, a reasonable juror could have found the failure to pay was the result of a conscious indifference to Doan's rights and/or welfare.

Lastly, the Vo Parties argue Doan is not entitled to interest, alternatively, it should not accrue for the time period between the grant of mistrial and reinstatement of the verdict. The judgment awards "all interest allowed by law." Accordingly, the record does not reflect the trial court has awarded any interest to which Doan is not entitled.

The Vo Parties have failed to establish the evidence does not support the damages awarded by the jury or that Doan is not entitled to any interest. We therefore overrule issue eight.

11

### III. RESCISSION AND REINSTATEMENT

The Vo Parties' first issue challenges the trial court's withdrawal of its order granting mistrial and reinstatement of the jury verdict, contending Doan's counsel acted without proper authority or substitution of any authorized party. The record reflects Doan died on September 1, 2012. On September 13, 2012, Doan's counsel filed a motion to enter final judgment and a motion to reconsider and withdraw the order granting plaintiff's motion for mistrial.

On August 13, 2014, Doan's counsel filed an amended motion to enter final judgment which states that "currently pending before the Court is Plaintiff's Motion for the Court's Designation of Lan Thi Nguyen as Representative of Ho Kim Doan, Deceased for Prosecution of Civil Action." On August 15, 2014, the Vo Parties filed their "CONSOLIDATED OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO ENTER FINAL JUDGMENT AND AMENDED MOTION TO RECONSIDER AND WITHDRAW ORDER OF MISTRIAL" and argued Doan's motion was "procedurally defective because it has purportedly been filed on behalf of the deceased plaintiff, Ho Kim Doan (who died on or about September 1, 2012 due to causes unrelated to the claims in this lawsuit), without proper authority and without proper substitution of an authorized party to prosecute this case, in accordance with Rule 151 of the Texas Rules of Civil Procedure and Texas probate law."

On September 16, 2014, the trial court withdrew the order of mistrial and entered final judgment. On October 27, 2014, the Vo Parties filed an application for writ of scire facias. *See* Tex. R. Civ. P. 151. The trial court denied the application, "at this time," on November 17, 2014.

On May 12, 2015, a "Notice of Real Party in Interest," pursuant to Rule 7.1(a)(1), was filed in this court. The notice states that on October 18, 2012, Doan's counsel filed a suggestion of death pursuant to Rule 151 and filed an amended

12

suggestion of death on July 9, 2014. Further, the notice states that on March 4, 2015, the Probate Court No. 1 of Harris County, Texas, granted Letters of Administration in the Estate of Kim Ho Doan, Deceased, and Lan Thi Nguyen was qualified as Independent Administratrix of the Estate on March 4, 2015. The notice is supported by counsel's affidavit.

The Vo Parties' brief claims that during the proceedings following Doan's death, "there was no party substituted to pursue these claims, as required pursuant to Rule 151 of the Texas Rules of Civil Procedure and Texas probate law." Rule 151 provides:

> If the plaintiff dies, the heirs, or the administrator or executor of such decedent may appear and upon suggestion of such death being entered of record in open court, may be made plaintiff, and the suit shall proceed in his or their name. If no such appearance and suggestion be made within a reasonable time after the death of the plaintiff, the clerk upon the application of defendant, his agent or attorney, shall issue a scire facias for the heirs or the administrator or executor of such decedent, requiring him to appear and prosecute such suit. After service of such scire facias, should such heir or administrator or executor fail to enter appearance within the time provided, the defendant may have the suit dismissed.

Tex. R. Civ. P. 151. Rule 151 does not require substitution – it provides a means for a case to either proceed or be dismissed by the defendant following the death of the plaintiff. *See id.* The Vo Parties do not refer this court to any probate law nor cite any case law supporting its contention that failure to substitute a party for Doan mandates reversal of the trial court's order.

Moreover, the record before this court does not reflect the Vo Parties timely presented their contention to the trial court. Doan's counsel filed the motion to enter final judgment and withdraw the mistrial order on September 13, 2012. The record reflects that it was nearly two years later, on August 15, 2014, that the Vo Parties

13

first raised this issue to the trial court in their "OPPOSITION" to the motion to enter judgment. However, the Vo Parties filed no motion and obtained no ruling on whether it was necessary to substitute a party for a deceased plaintiff after the jury has reached its verdict. *See* Tex. R. App. P. 33.1(a)(2). Accordingly, nothing is presented for our review. *See In re Fifty-One Gambling Devices Twenty Six Thousand Eight Hundred Eighty Dollars in United States Currency*, 298 S.W.3d 768, 778–79 (Tex. App.—Amarillo 2009, pet. struck) (holding error was not preserved where appellant failed to obtain a ruling on his motion to show authority). The Vo Parties' first issue is overruled.

In issue two, the Vo Parties argue that Doan's death was an insufficient basis for the trial court to withdraw its order granting mistrial and reinstate the jury's verdict. Further, the Vo Parties assert the motions to reinstate and enter judgment were untimely.

The Vo Parties cite *State v. Meyer*, 953 S.W.2d 822, 824–25 (Tex. App.—Corpus Christi 1997, no pet.), in support of this issue. However, the *Meyer* court concluded "the trial court's judgment [was] actually the dismissal of a prosecution" and therefore the State was entitled to appeal under article 44.01(a) the Texas Code of Criminal Procedure. The court then held the trial court did not have authority to dismiss the prosecution in that case. *Meyer* is clearly distinguishable from the case at bar.

*In re Baylor Medical Center at Garland*, 280 S.W.3d 227, 228 (2008) (orig. proceeding), is more analogous to the present case. In that case, a judgment was entered in accordance with the jury's verdict on May 6, 2005. *Id.* An order was subsequently entered granting a new trial. *Id.* That order was vacated and judgment on the jury's verdict was reinstated. *Id.* Following a request to reconsider, the order granting a new trial was reinstated. *Id.* Baylor petitioned the Texas Supreme Court

14

and while that case was pending, a new trial judge was elected. *Id.* at 229. On August 29, 2007, the Court abated the case for the new judge "to reconsider whether to enter judgment on the jury verdict or to grant a new trial." *Id.* at 232. *See* Tex. R. App. P. 7.2. In taking this action three and a half years after the initial verdict was entered, the Court held that "[a]s with any other order, a trial court should be able to reconsider a new trial order as long as a case is still pending." *Id.* at 228. The Texas Supreme Court reaffirmed this holding in *Hidalgo v. Hidalgo*, 310 S.W.3d 887, 889 (2010), declaring that any time before a final judgment is entered, "a trial court has power to set aside an order granting a motion for new trial."

The Vo Parties attempt to distinguish *Baylor* on the basis it involved the rescission of an order granting a new trial rather than a mistrial. The trial court's order in this case not only declared a mistrial, it granted a new trial and set the case for trial on April 26, 2010. Moreover, the *Baylor* court did not limit its holding to those orders granting a new trial but expressly stated, "[a]s with any other order."

In *Garg v. Pham*, 485 S.W.3d 91, 100 (Tex. App.—Houston [14th Dist.] 2015, no pet.), this court recognized *Baylor* as holding that a trial court has the authority to reconsider an order granting a new trial. The issue in *Garg* was the date from which the appellate deadlines ran and this court determined that "[i]f the trial court later reconsiders its order on the motion for new trial and reinstates the judgment, the appellate deadlines run from the order reinstating judgment." *Id.* at 100-01. While we are not faced with that precise issue in this case, our decision in *Garg* clearly acknowledges the trial court's power to reconsider its order and reinstate the judgment. Similarly, in *Gathe v. Gathe*, 376 S.W.3d 308, 315 (Tex. App.—Houston [14th Dist.] 2012, no pet.), we determined that "[w]hen the trial court 'ungrants' a new trial, the original judgment cannot be reinstated; rather, the trial court must enter a new judgment." Moreover, the trial court is not prevented from rendering the new

judgment on the same grounds as those asserted before the new trial was granted. *See Shepherd v. Young*, 01-08-00071-CV, 2011 WL 4399978, at \*3 (Tex. App.—Houston [1st Dist.] Sept. 22, 2011, no pet.) (mem. op.).

We are aware that in these cases a judgment was entered before the new trial was granted. The record in this case reflects the trial court received the verdict and entered it into the minutes of the court but no judgment was signed. The judgment entered in this case is in accordance with that verdict. "[U]ntil the final judgment is rendered, the court has complete power to render such judgment as it deems the parties, upon the merits, are entitled to have, since the parties and subject matter are before the court and subject to its jurisdiction." *Texas Land & Loan Co. v. Winter*, 93 Tex. 560, 57 S.W. 39, 41 (1900). A trial court is authorized to render judgment in conformity with the jury's verdict. *See Cunningham v. R. W. McPherson & Associates, Inc.,* 392 S.W.2d 145, 146 (Tex. Civ. App.—Waco 1965, writ ref'd n.r.e.)

The cases discussed above do not support the Vo Parties' claim that the reason for the trial court's reconsideration of its order affects its ability to do so, or to enter judgment in accordance with the jury's verdict. Because the trial court can reconsider its order as long as the case is still pending, the Vo Parties' argument that the motions were untimely is without merit. Accordingly, issue two is overruled.

The Vo Parties' third issue claims the trial court's rescission of its order granting a new trial and entering judgment on the jury's verdict was extremely prejudicial and erroneous after substantial additional discovery and expenditures by the Vo Parties. The Vo Parties cite no authority.

Although we recognize the amount of activity that occurred after the new trial was granted in this case was apparently not present in the cases discussed above, it is to be expected that once a new trial is granted, further activity in preparation for

16

that trial would occur. There is no indication the lack of such activity was a deciding factor in concluding the trial court had the power to reconsider its order. *See Baylor*, 280 S.W.3d at 228. Accordingly, we overrule the Vo Parties' third issue.

## IV. THE JURY'S VERDICT AND THE TRIAL COURT'S JUDGMENT

In issue five, the Vo Parties contend the judgment's award of attorney's fees and punitive damages for failure to pay maintenance and cure is contrary to the trial court's post-verdict rulings denying Doan's motions for summary judgment on maintenance and cure. However, the Vo Parties make no references to the record and cite no authority.

Issue six argues the reinstated verdict is internally inconsistent and therefore legally defective. The Vo Parties also claim the jury charge and verdict form did not set forth the proper law with respect to recovery of punitive damages for failure to pay maintenance and cure, thus the jury's findings are internally inconsistent. Again, the Vo Parties cite no authority.

In issue seven, the Vo Parties claim the trial court erred in selectively entering judgment on some of the jury's findings, while excluding others. The Vo Parties cite no authority.

The Vo Parties have the burden to present and discuss their assertions of error in accordance with the appellate briefing rules. *See Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 607 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). It is not our duty to review the record, research the law, and then fashion a legal argument for appellants when they have failed to do so. *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Briefing waiver occurs when a party fails to make proper citations to authority or to the record, or to provide any substantive legal analysis. *See* Tex. R.

17

App. P. 38.1(i); *Marsh v. Livingston*, No. 14–09–00011–CV, 2010 WL 1609215, at *3 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, pet. denied) (mem. op.); *Canton–Carter*, 271 S.W.3d at 931*; Sterling v. Alexander*, 99 S.W.3d 793, 798–99 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Even though the courts are to interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Because the Vo Parties provide no legal authority or analysis applying appropriate authority to their remaining points, we conclude they have thereby waived those complaints. *See* Tex. R. App. 38.1(i); *Katy Springs*, 476 S.W.3d at 607; *Collins v. Walker*, 341 S.W.3d 570, 575 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (the failure to cite legal authority resulted in waiver of a complaint the evidence was legally and factually insufficient); and *Nguyen v. Kosnoski*, 93 S.W.3d 186, 188 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("An issue not supported by authority is waived") (citations omitted)).  Accordingly, issues five, six and seven are overruled.

## V.    CONCLUSION

Having overruled all of the Vo Parties' issues, we affirm the trial court's judgment.


/s/    John Donovan
        Justice


Panel consists of Chief Justice Frost and Justices Christopher and Donovan.